UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| FREDRICK LOFTIN RAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:21-cv-00090-JRH-BKE |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

**RULE 26(a)(2) EXPERT REPORT**

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Laura Alvis, submits the following expert report:

I. <u>Expert Witness:</u>

Laura Alvis

1968 Peachtree Road

Atlanta, GA, 30309

II. <u>Data/Information Considered:</u>

The Complaint submitted on behalf of the Plaintiff with Exhibit "D" from Joyce Black, medical records from Augusta VA hospital, Asheville VHA, and Charles George VAMC. Additionally, the deposition of Frederick Loftin Ray and the opinions and expert report of Plaintiffs' expert witness Joyce Black.

III.    Opinions:

I completed my Bachelor of Science degree, with a major in Nursing, in 1997 at St. Xavier University in Chicago, IL, and earned my RN license that same year. In 1998 I attended the Wound Ostomy Continence Nurse Education Program at Emory University in Atlanta, GA. The following year, 1999, I sat for the nationally accredited CWOCN exam and became a Certified Wound Ostomy Continence Nurse. I continue to pass the WOCN certification exams every 5 years; in 2009 I chose not to recertify in the Continence portion, but continue to remain certified in Wound and Ostomy, so my current title is CWON. Since 1999, in my practice as a Certified Wound Care Nurse, I assess, manage and provide hands on care to patients with a variety of skin, wound and tissue injuries, including those suffered by MR. Ray

My opinions are based on my education, training, experience, and familiarity with applicable literature, which I applied to the data available in the above-reference materials. My opinions in this case are consistent with established principles in medicine. In reaching my opinions in this case, I applied my education, training, experience, and familiarity with applicable literature with the same objectivity that I employ when reaching similar opinions in the context of patient care.

Plaintiff Fredrick Loftin Ray ("Mr. Ray" or "Patient") was using his own wheelchair with a ROHO cushion at the hospital that were both verified as being appropriate for pressure relief at that time by a Physical Therapist. The PT also evaluated Mr. Ray's seating position and ensured that he was doing proper weight shifting/pressure relieving movements while in his wheelchair. The patient also testified that he has been doing weight shifting for so long "it's automatic". Thus, Mr. Ray's pressure relief while he was seated in his wheelchair was appropriate and not an issue. Furthermore, per records and patient's testimony, as a paraplegic of many years, Mr. Ray

preferred to transfer and reposition himself while in bed, wheelchair and on the toilet. Given the expertise of the spinal cord unit and their work with patients of Mr. Ray's history and condition, no standard of care was breached since the staff knew he was willing and able to complete these tasks of daily life, which also maintained his independence.

Mr. Ray was undergoing a bowel prep from approximately the time of his admission through the second colonoscopy on 11/14/18. Per both records and patient's testimony, the bowel prep took place both on the toilet, which had a padded seat, and the bed, but did not continue after his colonoscopy around noon on 11/14/18. Thus, extended time on toilet was not a factor after 11/14/18 around noon. Additionally, nursing staff was administering the bowel prep and responsible for the output, so they were frequently visualizing Mr. Ray's ischial areas and did not visualize any changes in skin condition.

Mr. Ray underwent his second colonoscopy on 11/14/18 around noon. During that procedure, he was positioned onto his side. Between the prep and procedure itself, at least 4 healthcare professional staff would have easily visualized his ischial areas, and any wounds or skin issues visible at that point would have been noted.

Plaintiff expert Joyce Black makes multiple references to a bedpan being a likely factor in the development of patient's wounds. However, per Mr. Ray's testimony, a bedpan was never used in his bowel prep. In fact, when the patient was in bed during bowel prep, he describes a very specific setup of absorptive pads to assist in containing the volume of stool. Thus, a bed pan was not a contributing factor to wounds.

Plaintiff expert Joyce Black also writes that an unpadded commode seat "could have easily led to the ischial pressure ulcers". However, Mr. Ray states that the toilet seat he utilized at Augusta was indeed padded. Additionally, patient testified that he did have staff assist him with the toilet bowel prep, as his wheelchair was unable to get close enough to the toilet in such close quarters. Mr. Ray further testifies that he was doing his automatic weight shifts while on padded toilet seat. As such, the toilet seat was not a contributing factor to wounds.

Mr. Ray was on an air mattress during his hospitalization, per records and his own testimony. Being on an air mattress significantly decreases the pressure at all times while he is in the bed. Furthermore, both chart and patient's testimony state that he was capable of turning himself in bed and preferred to do it himself. His ischial wounds, however, are a result of a seating position, not a position while he is in bed. Additionally, Mr. Ray doesn't assert that the hospital bed caused his wounds and neither does expert Joyce Black.

Plaintiff expert Joyce Black states that 'his bowel prep would have increased the moisture and breakdown of the skin'. Extended periods of time in diapers, briefs or similar during a bowel prep would be needed to cause moisture breakdown to skin. But patient was not in diapers, briefs or similar for his bowel prep; he was either on the bed with extra pads or on the toilet. Further, the patient never exhibited the perineal skin breakdown associated with chemical or moisture damage from frequent bowel prep stooling. Thus, this is also a non issue in this case.

I reseve the right to change or add to my opinion after review of additional information should it become available, or in response to the opinions of other experts retained to testify in this case.

IV.  Exhibits:

I have prepared no exhibits at this time.  I anticipate that I may use Plaintiff's medical exhibits as demonstrative exhibits or visual aids.  I reserve the right to utilize any medical record, medical report, or other medical exhibit used by the Plaintiff and/or their medical expert.

V.  Qualifications:

My curriculum vitae is attached.

VI.  Compensation:

My rates are: $275 per hour for work such as: case examination, record review, and preparation of oral and written reports, phone calls, meetings, deposition and trial preparation; $500 per hour for testimony by deposition or at trial, billed in 8 hours/1 day increments, plus expenses for out-of-town travel.

VII.    Testimony At Trial or By Deposition Within Preceding Four Years:

I have no trial or deposition testimony within the preceding four years.

Respectfully submitted this 3rd day of January, 2022.

_____
Laura Alvis